UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHIPS INT'L INC., FELIX VERA, THE ESTATE OF CHRISTIAN LINT, and MARINE SERVICES INT'L INC.,<br><br>Defendants. | C23-1677 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendant the Estate of Christian Lint's ("the Estate") motion for summary judgment, docket no. 41. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

The material facts of this case are not in dispute. In early March 2021, the Tug Hunter, with Christian Lint serving as the vessel master, was towing the M/V American Challenger when the towline became entangled in a propeller, causing both vessels to drift toward Dillon Beach, California. First Amended Complaint ("FAC") at ¶¶ 39, 40

ORDER - 1

(docket no. 28). The anchor of the Tug Hunter was able to be deployed to stop its drift, but the M/V American Challenger continued adrift and grounded on a rocky shoreline south of Estero de San Antonio. *Id.* at ¶¶ 43, 44. Following the grounding, oil sheening was observed, prompting the deployment of pollution response personnel. *Id.* at ¶ 44. Inspections of the M/V American Challenger revealed unrecoverable residual fuel and oil, oiled debris, hazardous materials, and open tanks with oily water mixtures throughout the vessel. *Id.* at ¶¶ 45, 48. The United States Coast Guard ultimately recovered approximately 14 cubic yards of oiled debris, 400 to 760 gallons of mixed oily water, and 50 gallons of hydraulic oil from the vessel. *Id.* at ¶ 48. The United States estimates it has incurred $14,258,062.00 in response costs directly related to the pollution incident (the "Incident"). *Id.* at ¶ 53.

The United States filed this action on November 2, 2023, asserting that several defendants, including the Estate[1], are "responsible parties" within the meaning of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2720.[2] The Estate moves for summary judgment, seeking dismissal of all claims.

**Discussion**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). The moving party bears the initial burden of demonstrating the absence

---

[1] Christian Lint passed away before this action commenced.

[2] In the FAC (docket no. 28), the United States alleges six causes of action, all related to the OPA.

ORDER - 2

1  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A

2  fact is material if it might affect the outcome of the suit under the governing law.

3  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for

4  summary judgment, the adverse party must present affirmative evidence, which "is to be

5  believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at

6  255, 257. When the record, however, taken as a whole, could not lead a rational trier of

7  fact to find for the non-moving party, summary judgment is warranted. *See Beard v.*

8  *Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 'mandates the entry of summary judgment,

9  after adequate time for discovery and upon motion, against a party who fails to make a

10 showing sufficient to establish the existence of an element essential to that party's case,

11 and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477

12 U.S. at 322)).

13    The Estate argues that Lint was not an "operator" and therefore cannot be held

14 liable as a "responsible party." To assess whether Lint was an "operator" under the OPA,

15 the Court begins with the text of the statute. *See Kasten v. Saint-Gobain Performance*

16 *Plastics Corp.*, 563 U.S. 1, 7 (2011). Under the OPA, each "responsible party" is liable

17 for removal costs and damages resulting from the discharge or the substantial threat of

18 discharge of oil. 33 U.S.C. § 2702(a). "In the case of a vessel," a "responsible party" is

19 "any person owning, operating, or demise chartering the vessel." *Id.* at § 2701(32)(A).

20    The OPA does not define the term "operating," offering instead only a circular

21 definition that courts have supplemented by looking to the Comprehensive

22 Environmental Response, Compensation, and Liability Act ("CERCLA"). *See United*

23

ORDER - 3

*States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 420 (5th Cir. 2018) (noting that both statutes define the term "operator" "with the exact same language"). Indeed, CERCLA and the OPA share a common legislative purpose and structure, and courts have looked to the operator liability framework outlined in CERCLA when interpreting the OPA. *See id.*; *see also Harris v. Oil Reclaiming Co.*, 94 F. Supp. 2d 1210, 1213 (D. Kan. 2000).

The Supreme Court has addressed the "ordinary or natural meaning" of the term "operator" within CERCLA. *See United States v. Bestfoods*, 524 U.S. 51, 66 (1998) (internal quotation marks and citation omitted). In doing so, the Supreme Court reasoned as follows:

> "[U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."

*Id.* at 66–67. Indeed, "[i]n a mechanical sense, to 'operate' ordinarily means '[t]o control the function of; run: operate a *sewing machine*.'" *Id.* at 66.

The Fifth Circuit followed this reasoning in *Nature's Way*, 904 F.3d at 420–21, holding that "operating" a vessel under the OPA includes piloting or maneuvering it and that liability may extend to those who exercise joint or practical control over vessel operations. Courts have recognized that CERCLA "broadly 'extend[s] liability all the way down the causal chain, from those who generate waste through those who dispose of it.'" *United States v. Bros. Enterprises, Inc.*, 113 F. Supp. 3d 907, 913 (E.D. Tex. 2015)

ORDER - 4

1  (quoting *United States v. Slay*, 2013 WL 1312559, at *8 (E.D. Tex. Feb. 27, 2013) (citing

2  *OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir.

3  1997))). Stated succinctly, "…the common purposes and shared history of CERCLA and

4  OPA[] further suggest that OPA's 'responsible party' language should be read broadly."

5  *Id.* (citing *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 756 (5th Cir. 2011)

6  (internal quotation marks omitted)).

7     The Estate argues all claims against it should be dismissed because Congress did

8  not intend for individual vessel masters to be held liable as "operators" under the OPA.

9  Citing the statute's structure and associated financial responsibility provisions, the Estate

10 argues that the term "operator" is intended to be limited to entities with ownership or

11 managerial authority akin to an owner or charterer. The Estate emphasizes that the United

12 States did not require Lint to demonstrate proof of financial responsibility under 33

13 U.S.C. § 2716, which it asserts shows that the Government itself did not view Lint as a

14 "responsible party" under the OPA. In making this argument, the Estate relies heavily on

15 *Green Atlas Shipping S.A. v. United States*, 306 F. Supp. 2d 974, 981 (D. Or. 2003), a

16 case in which the court held that a vessel master was not an "operator." The *Green Atlas*

17 court reasoned that, because the OPA imposes strict liability for oil spills and requires

18 financial responsibility from "responsible parties," Congress must not have intended

19 vessel masters to be liable under the OPA without also requiring them to demonstrate

20 financial capacity to cover such a liability. *Id.* at 980–81. The Estate thus suggests that

21 the statutory and regulatory scheme reflects congressional intent to exclude vessel

22 masters from "operator" liability.

23

ORDER - 5

1       The Court finds these arguments unpersuasive. *Green Atlas* has never been followed by any court for the reason the Estate advocates and has been undermined by subsequent case law that emphasizes that "operator" liability turns on actual control, not regulatory insurance requirements. *See, e.g., Nature's Way*, 904 F.3d at 420–421 (citing *Bestfoods*, 524 U.S.) (holding that OPA liability may attach to parties who exercise joint or practical control over vessel operations). Accordingly, the holding and statutory analysis in *Green Atlas* does not compel the Court to grant summary judgment, and the Estate's argument based on congressional intent fails in light of more persuasive judicial authority. The Court declines to follow the reasoning in *Green Atlas*.

      Accordingly, the Court finds that the Estate's motion for summary judgment must be DENIED. Under the ordinary and natural meaning of the term "operator" as interpreted by the Supreme Court in the context of CERCLA, *see Bestfoods*, 524 U.S. at 65–67, and consistent with the Fifth Circuit's reasoning in *Nature's Way*, 904 F.3d at 420–21, the Court concludes that the term "operator" under the OPA includes an individual who directs or controls the movement of a vessel. It is undisputed that Lint was the master of the Tug Hunter, the tug that was towing the M/V American Challenger at the time of the Incident, and, as such, he was in control of the Tug Hunter when the Tug Hunter and M/V American Challenger began to drift. Consequently, the Court also concludes that Lint was an "operator" of the Tug Hunger within the meaning of the OPA at the time of the Incident.

**Conclusion**

      For the foregoing reasons, the Court ORDERS:

ORDER - 6

(1) Defendant Estate of Christian Lint's motion for summary judgment, docket no. 41, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record, to Ships International, Inc. at "SHIPS INT'L INC., c/o R. Shawn Griggs, 130 Nickerson Street, Suite 201, Seattle, WA 98109," *see* Summons of Ships Int'l Inc. (docket no. 1-2) and to the Estate of Christian Lint pro se.

IT IS SO ORDERED.

Dated this 22nd day of April, 2025.

Thomas S. Zilly
United States District Judge